UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 02-10998 |
| ACCURATE HOME INSPECTIONS, INC.<br>    Debtor | SECTION "B"<br>CHAPTER 7 |
| **MICHAEL CHIASSON, TRUSTEE**<br>    **Plaintiff** | **ADVERSARY NO. 04-1034** |

**Versus**

**STERLING J. CARDON, JR.,**
**VICKI M. CARDON,**
**CARRIE E. BOOKER and**
**ACCURATE HOME INSPECTIONS, LLC**
    **Defendants**

### MEMORANDUM OPINION

This matter came before the court on March 23, 2005 as a trial on the complaint of Michael Chiasson, trustee ("trustee") for avoidance of certain payments under 11 U.S.C. §§547, 548, 549; for return of unlawful distributions under La. Rev. Stat. §12:92; for payment to the estate of certain loans under 11 U.S.C. §§542 and 549; for damages for failure to comply with court orders and other bankruptcy obligations; for turnover and/or avoidance of certain transfers of property; and alter ego claims. Carrie Booker has answered with a general denial of the trustee's claims, and has also asserted that she has not purchased any

-1-

property from the debtor. Accurate Home Inspections, LLC has also answered and asserted a number of affirmative defenses. On March 31, 2005, an order was entered approving a compromise between the trustee and defendants Sterling Cardon, Jr.[1] and Vicki Cardon.[2] On March 23, 2005, a trial was held on the counts of the complaint pertaining to the remaining defendants, Carrie E. Booker and Accurate Home Inspections, LLC.

### A.  Background Facts.

Sterling and Vicki Cardon are the directors, officers and stockholders of Accurate Home Inspections, Inc. ("Accurate Inc." or "debtor"), a business engaged in home inspection services. On November 15, 1991, Carrie Booker and Sterling Cardon entered into a Limited Liability Company Partnership Agreement[3] for the formation of a new entity named Accurate Home Inspection Services, LLC ("Accurate LLC").[4] Paragraph (4) of the agreement provided for Carrie Booker

---

[1]  Sterling Cardon is sometimes referred to as Sterling J. Cardon, Jr. or SJC.

[2]  Under the compromise, the Cardons agreed to pay the estate $5,000 and execute a promissory note in favor of the estate in the amount of $75,000, which would be deemed paid in full 60 days from execution by the payment of $55,000. Pleading 102. The compromise was completed and the Cardons were dismissed as defendants from this adversry by order dated June 232, 2005. Pleading 51.

[3]  Exhibit 2.

[4]  The complaint names Accurate Home Inspections, LLC as a defendant; however, the Partnership Agreement specifies the name of the newly formed entity to be Accurate Home Inspection Services, LLC. Exhibit 2.

(CB in the agreement) to buy from Sterling Cardon "the right to use the Accurate/Sterling name, the client list, and an employment contract" for Sterling Cardon to be employed for four years, for the sum of $60,000. Paragraph 12 of the agreement specified the terms of Sterling Cardon's employment, including that Mr. Cardon would work for the LLC for a period of not less than four years, and would enter into a noncompetition agreement for the same period. The agreement also provided that "[s]hould SJC leave before the end of four years then he must pay CB $15,000 for every year he does not work, unless (i) otherwise agreed upon by partners or (ii) CB has collected net income of at least $60,000."[5] On November 15, 2001, Carrie Booker wrote a check to Sterling Cardon Jr. in the amount of $60,000.[6] On the check, in the memorandum section, are written the words for "employment contract/loan."

Barely three months after the partnership agreement was signed, on February 19, 2002, Accurate Inc. filed a voluntary Chapter 7 petition.[7] Mr. Cardon signed the petition as the president of the debtor corporation. The debtor's statement of financial affairs reflects that the debtor has no income and no expectation of any

---

[5] *Id.*

[6] Exhibit 1.

[7] Exhibit B-1.

future income.

On February 18, 2004, the trustee filed his complaint naming as defendants Sterling J. Cardon, Jr., Vicki M. Cardon, Carrie Booker and Accurate Home Inspections, LLC. At issue in this case is Count VII of the complaint, for turnover or avoidance of transfers. The trustee contends that the $60,000 proceeds from the purchase of alleged property of the debtor belongs to the estate, and should be turned over to the trustee. Alternatively, the trustee asserts that the estate did not receive a benefit from the transfer of the debtor's property to Carrie Booker, and that the transaction should be avoided under 11 USC §548 or La. Civil Code Art. 2036 and 11 USC §544. Ms. Booker contends that a sale of assets by the debtor did not occur. Instead, she argues that she contracted directly with Mr. Cardon for his employment, and that she purchased from Mr. Cardon the Accurate name, the client list and the employment contract for $60,000.

**B. Applicable law**.

1. Section 548(a)(1)(A)

Section 548(a)(1) of the Bankruptcy Code provides:

>  (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

A transfer is avoidable under 11 U.S.C. § 548(a)(1)(A) if: (1) it is a transfer of the debtor's interest in property; (2) that occurred within one year of the filing; and (3) was made with actual intent to hinder, delay, or defraud.[8] The trustee bears the burden of proving the elements of a fraudulent transfer under §548(a) by a preponderance of the evidence.[9]

The court has deemed certain matters as admitted, including that the partnership agreement was entered into within one year of the debtor's bankruptcy filing, and that the debtor received no value in exchange for the transfer of the property. The court holds that the trustee has failed to meet his burden of proving that the transaction with Ms. Booker was made with "actual intent to hinder, delay or defraud." On the contrary, the evidence in the case indicates that the transfer

---

[8] *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991); *In re Taubman*, 160 B.R. 964, 983 (Bankr. S.D. Ohio 1993).

[9] *In re Maple Mortgage, Inc.*, 81 F.3d 592, 596 (5th Cir. 1996); *In re Sullivan*, 161 B.R. 776, 781 (Bankr. N.D. Tex.1993); *In re The Bennett Funding Group, Inc.*, 232 B.R. 565, 570 (Bankr. N.D. N.Y. 1999); *In re American Way Service Corp.*, 229 B.R. 496, 525 (Bankr. S.D. Fla. 1999).

was one made for a business purpose, and not to defraud the creditors of Accurate Inc. A dispute exists as to the true nature of the transaction; i.e., whether it was the purchase of assets of Accurate Inc. or a partnership agreement calling for the employment by Mr. Cardon individually; however, there is no evidence that defendants intended to hinder, delay or defraud creditors or the estate in the structure of the transaction. Accordingly, the complaint against defendants under §548(a)(1)(A) will be dismissed.

**2. Section 548(a)(1)(B)**

Section 548(a)(1)(B) of the Bankruptcy Code states:

> "(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation,
>
> (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor

was an unreasonably small capital; or

   (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

A transaction is avoidable under §548(a)(2) if it was a transfer: (1) of "an interest of the debtor in property"; (2) made on or within one year before the date of the filing of the bankruptcy petition; (3) for less than a reasonably equivalent value; and (4) which caused or increased the debtor's insolvency.[10]

At trial, this court has deemed admitted several matters relevant to §548(a)(1)(B), including: (i) that Accurate Inc. received no value in exchange for the property transfer; (ii) that the transaction was made within one year of the filing of the debtor's voluntary petition; and (iii) that at the time of the transaction, the debtor was insolvent or became insolvent as a result of the transfer.

Defendants assert that §548(a)(1)(B) is not applicable because the transaction did not involve the sale or transfer of property of Accurate Inc. Instead, Ms. Booker testified that she paid for an employment agreement with Sterling Cardon. Defendants contend that the partnership agreement on its face calls for the purchase <u>from Sterling Cardon</u> of the "Accurate/Sterling name, the client list and

---

[10] *In re GWI PCS 1 Inc., et al.*, 230 F.3d 788, 805 (5th Cir. 2000); *In re Zedda*, 103 F.3d 1195, 1203 (5th Cir. 1997).

an employment contract from SJC personally."[11]  Both Mr. Cardon and Ms. Booker testified at trial that Accurate Inc. did not maintain a client list, therefore, Ms. Booker in effect paid $60,000 for the employment contract and the Accurate/Sterling name.

Mr. Cardon's testimony expressed a different view of the transaction.  Mr. Cardon testified that the assets specified in the partnership agreement were transferred to Booker; however, in addition, Accurate Inc. also transferred several other assets, including its telephone number, goodwill, advertising materials and the ongoing business operations.  These assets were in turn transferred by Booker to Accurate LLC in exchange for her 50% ownership interest in Accurate LLC.

The court finds the testimony of Ms. Booker as to the nature of the transaction to be credible.  Initially, the court notes that the only written document that reflects the terms of the transaction is the Partnership Agreement, and that agreement on its face speaks in terms of a sale between Ms. Booker and Mr. Cardon for the employment agreement, name and nonexistent client list. The check written by Ms. Booker also reflects that she paid Mr. Cardon for the employment contract.[12]  The parties agree that a client list did not exist, and was not part of the

---

[11]  Exhibit 2, para. 4.

[12]  Exhibit 1.

transfer. The only other item named in the agreement, the Accurate name, is insufficient for this court to find that the transaction was in actuality a disguised sale of the assets of Accurate Inc. This is especially true where the name used by the new entity is similar, but not the same as the old entity, and because Mr. Cardon formed another entity, named Sterling's Accurate Home Inspections, LLC., using a portion of the name that was supposedly transferred to Ms. Booker.[13]

The court finds credible Ms. Booker's explanation of the transaction, that in essence she agreed with Mr. Cardon to form a new business and have him teach her the business. Ms. Booker testified that, prior to the transaction, Mr. Cardon had expressed an interest in leaving the appraisal business. She was interested in learning the business, and agreed that Mr. Cardon would work for a new enterprise, and not compete, for a four years while she learned the appraisal business. She also testified that Accurate LLC did not receive any assets from Accurate Inc., and that Accurate LLC owned few assets, consisting mainly of ladders, moisture meters, and tools, and that she purchased these items for the company.

The record also supports Ms. Booker's version of events. Mr. Cardon was unable at trial to identify significant assets that could have been transferred from

---

[13] Exhibit B-3. Accurate LLC was short lived. The testimony at trial was that Ms. Booker started her own inspection service, called Booker Building Inspections, LLC in 2003, and that Mr. Cardon, in August 2003 commenced his own business under the name of Sterling's Accurate Home Inspections, LLC.

Accurate Inc., besides the telephone number, goodwill, and advertising materials. While it is conceivable that Ms. Booker would pay $60,000 for intangible assets of Accurate Inc., the written documents specify that her agreement was with Mr. Cardon for his employment with the newly formed entity to facilitate her training in the industry. It is clear that the appraisal business depends not on use of tools and supplies or other hard assets, but instead upon the expertise of individuals, and that is what Ms. Booker sought in employing Mr. Cardon. Additionally, defendants have produced an answer filed by Mr. Cardon in a state court lawsuit alleging that Mr. Cardon is the owner of certain telephone numbers belonging to Accurate LLC.[14] Ms. Booker testified at trial that she did not use the Accurate Inc or Accurate LLC telephone numbers after the businesses ceased, and she formed her own appraisal company in 2003. She also testified that Mr. Cardon controlled the Accurate Inc. main telephone number, and caused it to be transferred to Accurate LLC.

This court is not persuaded that the assets of Accurate Inc. were fraudulently transferred to Accurate LLC, and that Ms. Booker paid funds to Mr. Cardon that should have been received by Accurate Inc. for an asset transfer. The testimony of

---

[14] Exhibit B-6. Answer, Reconventional Demand and Application for Preliminary Injunction and Temporary Restraining Order filed in the case of Carrie E. Booker versus Sterling J. Cardon, Jr., Vicky M. Caron, and Accurate Home Inspection Services, LLC, 24th JDC for the Parish of Jefferson, State of Louisiana, Case 597-812.

Mr. Koch, plaintiff's expert in business valuations, does not change this conviction. Mr. Koch testified that $60,000 reflects a reasonable value for assets transferred of Accurate Inc., which he assumed included the Accurate name, client list, telephone number and goodwill, or reputation in the industry. While $60,000 is the amount paid for the employment contract, that fact alone is insufficient to establish that the transaction was a disguised transfer of Accurate Inc.'s assets.

The trustee relies on the case of *Stoumbos v. Kilimnik*[15] as support that the transfer of a company's goodwill and operations as a going concern may be avoided as a fraudulent transfer. *Stoumbos*, however, is distinguishable. *Stoumbos* involved the transfer of a corporation's assets to a new entity under a purchase agreement, where the principal/owner received a promissory note and security interest in the assets of the new entity. When the new entity defaulted on payments, the owner foreclosed on his security interest. The owner then incorporated a third entity, and transferred the foreclosed entity's facility, employees, and phone lines to the new entity.[16] An involuntary petition was filed against the foreclosed entity, and the trustee sued the principal/owner to, among other things, recover the value of the foreclosed entity's assets that were

---

[15] 988 F.2d 949 (9th Cir. 1993).

[16] *Id.* at 953.

surrendered to the owner in satisfaction of the debt owing to the owner.  The Ninth Circuit ultimately subordinated the owner's claims in the bankruptcy proceeding, imposed successor liability on the most recently formed business, and determined that the owner benefitted from the fraudulent transfer of the debtor corporation's goodwill to the third entity.[17]  The court stated that the owner took steps to misappropriate the going concern value of the foreclosed company where, acting alone, he set up a new company, shifted the plant and employees to the company, and generally moved the new business to the company.

This case, however, is not so clear cut.  Accurate Inc. does not possess a physical plant or employees and has very little in the way of physical assets.  Instead, the business revolved around the skills of Mr. Cardon.  He agreed to be employed by Ms. Booker and work for a period of years with Accurate LLC, so that she might learn the appraisal business.  That scenario is different from the actual transfer of assets and facilities to a new business, where the owner remains in control, leaving only a shell corporation behind in bankruptcy.

In summary, the court finds that the trustee has failed to sustain his burden of proving that a transfer of the debtor's property occurred to make § 548(a)(1)(B)

---

[17] *Id.* at 963.

applicable. The court will enter judgment dismissing the complaint as to the §548(a)(1)(B) allegation.

### 3. Revocatory actions

Section 544(b) of the Bankruptcy Code authorizes the trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . ."[18] The applicable law in this instance is the Louisiana revocatory action.

The Louisiana revocatory action, codified in Louisiana Civil Code Art. 2036, provides:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

To prevail in a revocatory action the plaintiff seeking to avoid a transfer must prove that the offending transaction: (1) was made or effected after the right of the obligee arose and (2) caused or increased the obligor's insolvency.[19] The plaintiff must also show the existence of some debt–liquidated or otherwise–at the

---

[18] 11 U.S.C. § 544(b).

[19] *Traina v. Whitney National Bank*, 109 F.3d 244 (5th Cir. 1997); La. Civil Code art. 2036.

-13-

time of the offending transaction to maintain a revocatory action.[20] Insolvency is met when an obligor's total liabilities exceeds the total of his fairly appraised assets.[21] Once a creditor alleging insolvency of a debtor shows the amount of debts, it is then incumbent upon the debtor to show that he has retained assets of an equal or greater value.[22]

While the pre-trial order specifies that a contested issue of law in the case involves whether a revocatory action is present, counsel for the trustee has not briefed the issue. This court holds that a revocatory action is not applicable in this case. The trustee has not demonstrated the existence of a debt due to the obligee that caused or increased the insolvency of Accurate Inc. At best, the trustee's argument is that Ms. Booker transferred $60,000 to Mr. Cardon that should have been paid to Accurate Inc. for the sale of Accurate Inc.'s property. For the reasons discussed above, the court finds that the trustee has not shown that assets of the debtor were transferred. What the trustee has shown is that Ms. Booker contracted for the employment of Mr. Cardon, and paid Mr. Cardon for the agreed upon services. This is insufficient under any of the various causes of action alleged by

---

[20] *Traina*, 109 F.3d at 247.

[21] La. Civil Code art. 2037.

[22] *Central Bank v. Simmons*, 595 So.2d 363 (La. App. 2nd Cir. 1992).

the trustee. A judgment dismissing the trustee's complaint as to Carrie Booker and Accurate Home Inspection Services, LLC will be entered.

New Orleans, Louisiana, June 23, 2005.

                                                       _____
                                                       Jerry A. Brown
                                                       U.S. Bankruptcy Judge